Good morning. May it please the Court. Daniel Tapatio for Estate of Kenneth Sumner. The trial court improperly dismissed Plaintiff's Eight Amendment claims of excessive force and failure to protect by construing the facts most favorable to the moving party. The trial court accepted the defendant officer's reports that they reasonably responded once they learned of the attacks despite the extreme inconsistencies of the medical reports. Regardless, the trial court still should have granted Plaintiff's request for leave to amend the complaint as they are liberally granted. Did you indicate to the district court what additional allegations you would have added if afforded leave to amend? Yes, Your Honor, that there were multiple defendants, that there was a plan, that they intended to attack Mr. Sumner, and that at minimum that they were officers who commonly known to have possessed firearms. At minimum, were officers in possession of firearms, or at worst, the officers who participated in the lacerations on his scalp and forehead. I mean, it seems like the key element for Iqbal plausibility of inference purposes is whether or not you allege sufficient facts to infer that the injuries were caused by a boot that would have tied it to the guards as opposed to the cellmate. And, you know, the reference is to stellate lacerations, but I don't, what does that mean and how does that lead to an inference that it had to have been a boot? Yes, in the complaint, Your Honor, part of the CDCR uniform checklist is that it's mandatory for officers to carry boots with those type of imprints. And it's also a prohibited item. I mean, is the allegation that it was a boot print? Because a stellate laceration just, I mean, that's a medical term, and it just means a laceration that sort of spreads out from a point of impact. That's all that that means. So that stellate laceration doesn't say boot to me, but if you could have alleged more that would say it was a boot, that might make this a different case. Yes, Your Honor. The complaint was very clear that he suffered injuries consistent with a boot stomp. Consistent with, but that, I mean, what are the facts that suggest it is? Judge Wardlaw has a question. Yeah, I just want to follow up on that because it seems like there's inconsistent allegations in the complaint on the failure to protect. It alleges that he was placed, deliberately placed with a violent cellmate to beat him up to the point of cardiac arrest. But then on the excessive force, it alleges that it was the guards. Can you explain those inconsistent allegations and how they come together? Yes. So plaintiff's position is that Mr. Latu and Mr. Sumner did get into an altercation. However, that the officers did have a plan to attack Mr. Sumner. And so, yes, there are injuries that Mr. Latu could have committed, but there's also injuries that Mr. Latu could not have committed, which explains why the officers were involved in the boot stomping death of Mr. Sumner. That's something you could more clearly allege if you had the opportunity to amend your complaint? Absolutely. We would make that clear distinction that it was in conjunction and be a little more firm in the allegations that it was in conjunction. But plaintiffs were never given that opportunity. I know that in the answering brief, defendants state that plaintiffs were given multiple opportunities to cure deficiencies. The thing is, is that although I believe it was the second amended complaint, they were not a result of dismissals and the court granting leave to amend. They were stipulated motions for leave to once plaintiffs received the police reports, they amended the complaint to insert the six individually named officers in addition to Mr. Latu. So was this a case where there was a prior ruling and then a chance to amend and then a second dispositive ruling or there just was the one ruling? The one ruling, yes, which we think is important because it seems like a lot of the issues that were in the answering brief such as vagueness or based on speculation, which I'd like to address as well, could easily be cured. Could easily be cured in an amendment. Can you address, going back to my question about what could you say in terms of more detail about the medical evidence, which is very sort of loosely described in the complaint, that would show that it was a boot as opposed to something else? I mean, because you're saying it's consistent with a boot. It could be consistent with a boot, with hitting him, banging his head on the ground. It could be consistent with a lot. What would tip it that you know it's a boot? What are the facts that support that inference that it's a boot? Well, to start with, Mr., let's be clear that a boot is a prohibited item by the inmates. But not only that, though, but the injuries sustained by Mr. Sumner were the result of multiple parties. The fact that he was found in full cardiac arrest, the fact that he was found in a pool of blood, that the officer's version of events in their short reports are that they didn't notice it until there was a pool of blood running from underneath the door. What that indicates is that this was a boot-stomping death that didn't go quickly and it didn't go quietly. It was for a long duration of time. And so once he got into the—once he was picked up by the paramedics and air-vacced to the air center, he was pulseless. He had a collapsed lung. I mean, he was in a state of condition to where it took many people, several people, to be able to put him in that state. Could you say anything additional about the nature, exact nature of the lacerations that would, you know, raise an inference that it's boot? Opposed to something else? Just that the medical report states boot-stomp. The medical report, in fact, does. It refers—yes. But you didn't quote it or attach it or in your complaint. No. No, I did not. Okay. Now, going to the excessive force that we were just discussing, what plaintiffs try—or, I apologize, what defendants try and argue is that because we can't pinpoint exactly which of the six defendant officers necessarily or a few of them committed the boot-stomp, they are all—they all are integrally involved in it. With integral participation, there's case law out there that states that if there's an armed officer who is watching the constitutional violation occur, that that's sufficient for the affirmative act for them to be involved in the act itself. But it seems like what you're—the inference is we can tell from the nature of the injuries that it's a boot. If it's a boot, it has to be an officer. And we don't know which officers, so we're just going to name all of them like a Summers v. Tice. We're just going to name everybody. And so are you pleading in the alternative that each of them individually was the one or—? No, we would disagree. We limited it to just six of the named—six officers. And— But what's the facts that say that once you know it's a boot and it has to be an officer, that I can say this officer? All we can go off of is the fact that based off of the reports, officers were there within moments. Even though they didn't hear this loud and long beating of Mr. Sumner, they somehow were able to report within literally moments in order to apprehend Mr. Latu. But it's also Mr. Latu's physical condition that also indicates that the officers were involved because, first of all, the reports were very concise. Not only that, though, but there's no report of Mr. Latu being covered in blood. There's no indication that he suffered any injuries. He had no additional contraband. And so their reports being so short only add to the—only add to the circumstantial evidence that, in fact, the officers didn't—did commit this crime. Well, your complaint states that he was already in full cardiac arrest by the time the officers arrived. And you've—I think you reputed that today. Is that—is that your position? Yes. So it's—I can't fault—much fault the district court for saying that's inconsistent with your theory that the officers caused the cardiac arrest. Your theory is that the officers engaged in boot-stomping, which caused the cardiac arrest, but your complaint on what you said today is that he was already in full-blown cardiac arrest by the time they arrived. That the officers—the paramedics—when the paramedics arrived to air back him out is what I said. I think your complaint says officers, but I'll— And my apologies. I really—but I did mean paramedics. I don't believe I misspoke this morning, but that's what we're alleging. Okay. And as far as the leave to amend issue, the trial court should have granted plaintiffs' request for leave to amend. Reviewing the cases cited by defendants in their answering brief only add to the position that the trial court should have allowed plaintiffs one—at least one opportunity to cure deficiencies. The cases that they cited were Salome, where the trial court already dismissed the case and gave clear instruction to the party on what needed to be cured. That never took place in this case. They also cited the McGlinchey case, where the court also had already been dismissed— the case had already been dismissed once as well. Again, we were never—the plaintiffs were never given an opportunity to do that. Also, going back to the series of cases that they cited as far as the allegations, the allegations didn't state that the officers used force because the plaintiffs named the six defendants. Those cases were also given opportunities to amend. And I'll reserve the last three minutes. Okay. All right. Thank you, counsel. We'll hear next from Mr. Duggan. Good morning. Deputy Attorney General Jeremy Duggan for defendants. May it please the Court. Decedent Sumner and his family suffered a tragedy when Sumner was attacked by his cellmate, Ogalani Latu. Plaintiffs have sued defendants, prison staff members, in relation to the attack, but plaintiff's Second Amendment complaint does not plead facts showing that defendants are— that defendants violated Sumner's constitutional rights, either for using excessive force or for failure to protect. Before talking about the complaint, I want to mention one update since the briefs are filed. After briefing was completed, Mr. Latu pled guilty to the murder of Mr. Sumner, and Latu was convicted in Kings County Superior Court in April 2024. That isn't directly material to the issue of whether the Second Amendment complaint states a claim, but we felt it was important to update the Court. As stated in the Second Amendment complaint, defendant Duggan heard noises coming from the cell occupied by Sumner and Latu. He ordered them to stop their actions and then activated his personal alarm. The remaining five defendants responded to the alarm and arrived at the scene. At that time, as stated in the Second Amendment complaint, there was blood coming from under the cell door, and Sumner was in cardiac arrest. The responding defendants placed Latu in restraints and summoned medical care for Sumner. Defendants did not use force against Sumner, and the Second Amendment complaint does not plead facts showing that they did, despite asserting an excessive force claim. The Second Amendment. Sotomayor, what about this issue about the injuries in what the medical report says? I mean, he says that he could plead additional facts about the content of the medical report, but the medical report is an independent document the plaintiffs didn't prepare, says that it was due to a boot stomp, but it's not quoted, and those details are not in the complaint. Why shouldn't we grant leave to amend to add more on that? Well, the what it says in the Second Amendment complaint is that the Dr. Atherton also noted Mr. Sumner's distinct ciliate lacerations with a bulge on Mr. Sumner's left forehead and scalp. What page are you reading from? Oh, I'm sorry. I'm reading from paragraph 32. That would be ER 110. So it's lacerations with a bulge on Mr. Sumner's left forehead and scalp, presumably caused by a boot stomp. I mean, well, when I read that, it's unclear whether the presumably caused by a boot stomp is an editorial comment by the drafter of the complaint, or it comes from Dr. Atherton. And does Dr. Atherton, if it came from Dr. Atherton, does Dr. Atherton explain the basis for that conclusion? Those are additional details that might be added. I mean, you know what's in the medical report, and you know whether or not it says that. Could it be added that the doctor didn't, does the medical report say it was a boot stomp? Your Honor, we don't actually have the medical report since that was from an outside hospital. But the Plaintiffs' Counsel does have it, and we asked for it but haven't received it. The point about it being pled as presumably a boot stomp in paragraph 32 suggests that any amendment that said it was, that the medical report says it was definitely a boot stomp would be contradicted by the fact it was pled in paragraph 32, that it was presumably a boot stomp. And so the, and so to amend to... But it might give more, I mean, it really, all they have in this complaint to tie it to the officers is the stellate lacerations presumably caused by boot stomp. Other than that, there's just nothing that could tie it to the officers. So that's really what this comes down to. And the question is, you know, the district court shut this down without a chance for leave to amend, and this ambiguity seems like maybe they should have been given one chance to just add more and see whether they can raise this to a plausible inference under Iqbal. And maybe they can't, but why weren't they given the chance? Well, they weren't given the chance because the district court felt like they had been given enough chances already with the two previous amendments. But his point is that those were done, you know, voluntarily by the cooperation of the parties. There was never a chance where the district court, as we see these all the time, the district court dismisses one version of the complaint, says here's the deficiencies, I'll give you leave to amend, see if you can fix them. They come back. The district court looks at it and says, mm, didn't do it, so now it's with prejudice. That didn't happen here, right? That the district court issued two orders, one dismissing the entity defendants based on their Eleventh Amendment defense, and that was before the order that we're addressing here today, which regarding the individual defendants. But the district court didn't identify the deficiencies, give leave to amend, and then take a look at it. And the reason for that is because as to the individual defendants, any amended pleading would have contradicted the facts that are pled in the Second Amendment complaint. But that, I mean, that is not true with respect to this core inference about the stellate lacerations and whether they can be tied to a boot. I mean, that could conceivably be the subject of further additional detail. Maybe they can't do it, but it could in a way that would not contradict the allegations of the complaint. It's at least theoretically possible. You know, Rule 15 is a liberal standard. Usually you give them one chance to do it after you've identified these kind of Iqbal deficiencies. Well, I think I've addressed our arguments in terms of amending the statement in paragraph 32 about the medical report. I mean, the other thing that troubles me on the leave to amend is there are two places in the district court's order where the district court says, you know, when the opposition in the motion to dismiss, they're claiming this and they're not in the complaint. Why isn't that construed as essentially a proffer of what a leave to amend could show? And if the district court thought that those additional things in the opposition but not in the complaint might have made a difference, maybe there should be leave to amend to give a shot to put those in. Well, the district court didn't, you know, as to those, didn't think that those would have changed things because an amended complaint that would show that these individual officers, then the named defendants, were involved somehow in the attack by Mr. Latu is contradicted by the facts at paragraph 22 to 29, or on ER 108 to 109, in the second amended complaint, which specifies that in paragraph 25, incident reports are silent as to how much time elapsed between the assault and discovery of the lifeless body of Mr. Sumner, who was already in full-blown cardiac arrest once Corcoran staff finally intervened. Staff didn't arrive until Mr. Sumner was already in cardiac arrest. So to say that to now say in the complaint that staff used excessive force is contradicted by those pleadings, including the other pleadings about Officer Duncan being outside the cell when he heard the noises, other staff responding to Officer Duncan's alarm and then finding the finding Sumner already in cardiac arrest. So saying that in paragraph 25, that he was in full-blown cardiac arrest once Corcoran staff finally intervened, is inconsistent with saying that prior to that one or more officers went into the cell and did this bootstomp? Yes. Especially when considered in the way of the court. Could there have been two visits of staff? I mean, I don't see how the reference to staff arrived at one point is exclusive of someone else, maybe different persons arriving at an earlier point. Well, the complaint says that these staff members responded and then placed restraints on Mr. Sumner, on Mr. Latu, and some in medical care for Mr. Sumner. So when these staff members arrived, they didn't attack Mr. Sumner. What they did is to place Mr. Latu in restraint and provide aid to Mr. Sumner. And so it would be inconsistent to now say, oh, and in addition, they attacked Mr. Sumner. It just wouldn't make sense with the pleadings that have already been made. Chancellor, I have a couple questions. One is, first of all, did the district court hold a hearing before granting the motion to dismiss? No, the district court did not hold a hearing. This was on the papers. On the papers. Okay. And then my second question is, given that Mr. Latu pleaded guilty to murdering Mr. Sumner, doesn't that support the failure to protect allegations and the failure to conduct routine self-check allegations? Doesn't that bolster those claims? Well, I mean, as far as stating a claim in a second amendment complaint with the self-check allegations, I mean, that was almost a throwaway allegation. There isn't much plead about it at all, and it doesn't plead that any defendant had a responsibility to do self-checks or when the self-checks should have been done or anything close to that. As to failure to protect, there simply aren't facts pled that show that any of the defendants knew of and disregarded a substantial risk of serious harm to Sumner. Instead, the facts that are pled as to these defendants are that they, Officer Duncan heard the noises and they responded to the attack. And there do have to be individualized allegations under Iqbal and also under Lear v. Murphy. It's another case that we cited in our briefing. Right. But that goes to my third question I have about this case, which is, you know, we're still at the pleading stage. There's been no real discovery. And the only people who would know what really happened are Blatt II, Sumner, and the guards. Blatt II, I don't know what his situation is, but I'm sure his deposition hasn't been taken. Sumner's dead, and then there's these six guards who were there. So it's kind of hard to fault the complaint for not tying individual acts to individual defendants when we're at a stage where it's just all the evidence is in the hands of the prison and the officers and none is really, other than the medical reports, is really in the hands of the plaintiff. And so on that, I mean, in general, the way to get to discovery is to state a claim, and they haven't done that. And as for whether it's fair to allow them to proceed to discovery, I don't think that question's before the court because in the court below, they didn't ask for early discovery. But the pleading standard in federal court is just a short and simple statement of your claim. And maybe they can add specific individual facts later, but I mean, I guess my real focus is on whether or not they should be allowed leave to amend now that they actually have more facts. Are there any facts they could add to make these claims more plausible? The pleading standard is, as set out in Twombly and Iqbal, and so a mere possibility that the defendants violated Sumner's constitutional rights doesn't raise the issue. No, I'm saying they could add facts to make it plausible, more plausible. Yes, and as I said, certainly as to the excessive force claim, any facts that would allege that when these officers arrived, they used excessive force would be contradicted by the facts that are pled in the Second Amendment complaint, and as well as to the failure to protect claim because when they arrived, as the facts that are pled about these officers, they responded immediately. They did not know of a substantial risk of serious harm to Mr. Sumner and disregard it. And if there are no more questions, thank you. Your Honor, this Court should affirm, because plaintiffs failed to state a claim against the defendant officials and the district court did not abuse its discretion in denying leave to amend. All right. Thank you, counsel. We'll hear from you. Thank you, Your Honor. Just a few things. For the record, the medical records were turned over to opposing counsel, and as far as these contradictory statements that everyone's been using. What did you state about the boots? That they were consistent with the boot stomp. And that's in the record? That's in the medical report. Why didn't you make that part of the record before the district court or before us? I mean, that's your case. That's your entire case. It's a circumstantial evidence that there was a boot stomping involved and they didn't have boots in the cell. Isn't that what this comes down to? You don't have any direct testimony right now. That's all you got, right? Correct. And it's not in the record. Right. As far as the contradictory statements are concerned. If you were granted leave to amend, would you attach medical record? Yes, they would be attached. Can you agree that Mr. Latu attacked Mr. Sumner? At this stage of litigation, there's belief that Mr. Latu was involved as well. Now, as far as the contradictory statements in the complaint, they're statements that the officers used in their incident reports. And the reason why they were inserted into the complaint were not to adopt them, but to highlight the inconsistencies of the reports compared to the medical records. And so, again, plaintiffs should have been clearer as far as these version of events being untrue or extremely inconsistent. They used words like supposedly or officers alleged or they used terms that were vague. And so, on that, plaintiffs submit. All right. Thank you, counsel. The case, just argued, will be submitted.
judges: THOMAS, WARDLAW, COLLINS